## HERRICK *vs.* KINGSLEY.

A. exchanged a carriage with B. for land, the latter making false and fraudulent representations in regard to the quality of the land, and which he knew to be so at the time. On ascertaining the fraud, A. refused to deliver the carriage, it not having been delivered at the time of the bargain, and offered to return to B. the deed he had received from him, which had not been recorded; but B. insisted upon having the carriage, and carried it away notwithstanding the resistance of A. Afterwards B. sold the carriage to C. who had notice of the fraud, and on its again falling into the hands of A. he refused to permit C. to take it again. *Held*, that under these circumstances A. was entitled to rescind the bargain and retain the carriage.

THIS was *replevin* for a carriage and harness, which one *Robert M. N. Smyth* purchased of the defendant, in *November*, 1832, paying therefor in two lots of land in *Kilmarnock*, and sold to the plaintiff in the following *December*. The counsel for the defendant contended, that the sale of the carriage and harness by the defendant to *Smyth*, was made under such false and fraudulent representations of the quality and condition of the land given for the carriage and harness, as rendered the sale void, and entitled the defendant to retain them as his property.

It appeared in evidence, that at the time of the sale or exchange of the land for the carriage, *Smyth* represented the land, as having " a fine growth of timber on it," and as never having been " burnt over" — declaring that if the land had ever been burnt over, it should be no sale ; and made other similar representations. It appeared, further, that the land had in fact been burnt over, much of it twice, and was nearly valueless.

The carriage was not taken by *Smyth*, at the time of the bargain and execution of the deed. And when, in *January* afterward, *Smyth* went after the carriage, the defendant informed him that he had ascertained that the land was not what it had been represented to be, that he might have the deed of it back again, and that he should not permit him, *Smyth*, to take the carriage. *Smyth*, however, still insisted that the land had not been burnt over, repeated his affirmations in regard to the value, and said that he would have the carriage. He then went to the stable where the carriage was deposited and carried it off, though resisted by the defendant. The carriage and harness afterward com-

Herrick *v.* Kingsley.

ing to the possession of the defendant, he refused to give them up ; whereupon the present suit was commenced.

The counsel for the plaintiffs contended that there was no such fraud proved in the case, as would authorise the defendant to vacate the sale of the carriage and harness ; and if it would in regard to *Smyth,* it would not as regards the plaintiff, unless proved to have had notice of the bargain between *Smyth* and the defendant — and that if the defendant would have rescinded the contract on the ground of fraud, he should have returned to *Smyth* the deed of the land, or have re-conveyed it within a reasonable time.

It appeared, that in *June* following the taking of the carriage by *Smyth,* at *Augusta,* and the pretended sale to the plaintiff, he, *Smyth,* was found to be in possession of it at *Bangor.*

The Chief Justice, who presided at the trial, admitted in testimony whatever was proved to have been said by *Smyth* to the defendant, while treating with him for the sale of the land, provided the jury should be satisfied that the plaintiff had notice of the fraud, if there was any, or that there was any privity between the plaintiff and *Smyth,* by which the plaintiff would be implicated by his acts or declarations. But he instructed the jury that the subsequent admissions of *Smyth,* by way of narration of what he had said or agreed was not competent testimony to affect the cause.

The presiding Judge further instructed the jury, that, if they were satisfied from the testimony, that *Smyth* represented to the defendant that the land conveyed by him had a fine growth of timber, and that it had not been burnt over, and this was untrue, within the knowledge of *Smyth,* as the land had not been seen by the defendant, and was at the distance of about 100 miles from *Augusta,* where the bargain was made, if the defendant purchased, confiding in such false and fraudulent affirmations on the part of *Smyth,* as between them, *Smyth* had no title to the carriage in question, and that he had done enough to avoid the sale on the ground of fraud, and that no further act or ceremony was necessary on his part to produce this effect ; especially as *Smyth* had persisted in taking the carriage against his will ; unless the defendant had subsequently elected to abide by the bargain.

That, however, this testimony would not affect the plaintiff, unless he purchased with notice of the fraud, or unless there was some secret trust or confidence between him and *Smyth.* And he left it for the jury to determine, how far the fact that, notwithstanding the bill of sale made by *Smyth* to the plaintiff, in *December,* 1832, *Smyth* took the carriage himself in *January,* and was found in possession of it in *June* following, would justify such an inference.

The jury returned a verdict for the defendant, which was to be set aside and a new trial granted if the foregoing ruling and instructions were not correct; otherwise judgment was to be rendered thereon.

*R.* and *D. Williams,* for the plaintiff.

If the defendant would avoid the sale to which he was a party, for fraud, he must not retain any part of what he has received. *Kimball* v. *Cunningham,* 4 *Mass.* 502; 5 *East,* 542; *Woodward* v. *Cowing,* 13 *Mass.* 317; *Norton* v. *Young,* 3 *Greenl.* 30.

In this case, the defendant has never made a deed re-conveying the land to *Smyth.* By the first conveyance the title passed, and it may at any time be taken for the debts of the defendant. A mere offer to return the property is not sufficient. Nor would a mere tender back of the first deed be sufficient to re-vest the property. *Marshall* v. *Fiske,* 6 *Mass.* 24; *Parsons* v. *Dickinson & al.* 11 *Pick.* 352.

They contended further, that there was no such fraud in the bargain between the defendant and *Smyth,* as would vacate the sale as between them; but that if it were otherwise the plaintiff was not to be affected by it, there being no evidence in the case of notice to him, or of any privity between him and *Smyth.* They cited further, 2 *Stark. Ev.* 407; *Cross* v. *Peters,* 1 *Greenl.* 376; *Chit. on Con.* 112; 3 *Chit. Crim. Law,* 156, 307; *Buller's N. P.,* 31; *Pickering* v. *Dawson,* 4 *Taunt.* 779; *Pollard* v. *Lyman, Day's Cas.* 156.

*Vose,* for the defendant, controverted the positions taken on the other side, citing the following authorities: *Winchell* v. *Stiles,* 15 *Mass.* 230; *Potter* v. *Wheeler,* 13 *Mass.* 507; *Stone* v. *Davis,* 14 *Mass.* 360; *Bridge* v. *Eggleston,* 14 *Mass.* 251;

*Davenport* v. *Mason,* 15 *Mass.* 90 ; *Sugden on Vendors,* 223 ; *Camp. Cas.* 337 ; 14 *Ves. Jr.* 144; 1 *Salk.* 28 ; *Merrill & al.* v. *Colden,* 13 *Johns.* 395 ; 1 *Day's Rep.* 250 ; 1 *Day's Rep.* 156 ;        v. *Sumner,* 17 *Mass.* 110.

PARRIS J. — We are to keep in mind that *Herrick* stands in no better situation, in this case, than *Smyth,* his vendor. The jury have found that the purchase of the land by the defendant was induced by false and deceitful representations on the part of *Smyth,* and that the plaintiff either had notice of the fraud, or that there was such a secret trust and confidence between him and his vendor, as to exclude him from the position of an honest purchaser without notice. We are to consider the case then as if it were between *Smyth* and the defendant. From the depositions which are referred to in the report of the Judge it abundantly appears that the most gross misrepresentations were used by *Smyth,* in relation to the growth and quality of the timber on the land ; that, according to his representations, there was a fine growth, more than sufficient to pay for the land, and that the timber had not been destroyed or injured by fire ; — and that, being pressed by the purchaser on that point, he continued his asseverations that the land had not been burnt over, adding, " if it had it is no sale." The proof is, that the land had all been burnt over once and the greater part of it twice, excepting some low wet places where there was no timber save only a few cedars ; and that the timber had all been cut off or blown down and decayed on the ground. The jury have found that *Smyth* knew that these representations were false, at the time he made them. The land was at a distance from the parties, and the defendant relied upon the representations of *Smyth* as to the timber ; and for the correctness of those representations, especially that no injury had been sustained by fire, he must be held answerable.

On ascertaining the deception that had been practised upon him, the defendant offered to return the deed, and requested *Smyth* to return that portion of the consideration which he had received. *Smyth* not only declined to do this, but taking the carriage, which is the subject of this action, from the possession of the defendant, carried it away — the defendant resisting him and

endeavoring to prevent its removal. We do not perceive what more *Kingsley* could well have done to rescind the contract. It is said the surrender of the deed would not have reconveyed the land, so that its prior attachment as *Kingsley's* would have been avoided. Neither would a reconveyance by deed. There is no evidence of any attachment or any incumbrance created by *Kingsley*. The deed remained unrecorded, and when the defendant notified *Smyth* that the bargain was rescinded, the latter virtually refused to acquiesce, making no objection to the mode, or that the estate was encumbered, or that his rights were prejudiced by any thing the defendant had done ; but claimed a fulfilment of the bargain by carrying away the carriage, to which he could acquire no title without the consent of *Kingsley*, the owner. This consent was never given, and consequently the property never vested in *Smyth*, or in the plaintiff, his grantee. We might, perhaps, have found more difficulty in this case, if the action had been brought to recover back that portion of the consideration actually paid. But we view the conduct of *Smyth*, in taking the carriage from the defendant's possession against his will, as clearly without legal justification. Even if the contract had been perfectly fair on the part of *Smyth*, and he had been promised the carriage in writing, *Kingsley* might have withheld it ; and the property not having passed to *Smyth*, his only remedy would be by an action for damages. And herein is this case distinguishable from *Kimball* v. *Cunningham*, and other similar cases, where the property had been actually delivered, and consequently could be reclaimed only by annulling the contract.